USDC IN/ND case 2:24-cv-00171-PPS-JEM   document 5   filed 04/18/24   page 1 of 6

45D05-2404-CT-000521
Lake Superior Court, Civil Division 5

Filed: 4/18/2024 11:01 AM
Clerk
Lake County, Indiana

| STATE OF INDIANA | ) | | IN THE LAKE SUPERIOR COURT |
|---|---|---|---|
| | ) | SS: | |
| COUNTY OF LAKE | ) | | CAUSE NO._____ |

| JADE LAW, | ) |
|---|---|
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GAILMARD EYE CENTER, LLC, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff alleges against Defendant as follows:

1. The Plaintiff is Jade Law, a qualified employee of Defendant at all times material to this Complaint. Plaintiff alleges that she was discriminated against and retaliated against on the basis of her disability and race (African American/Black) in violation of her federally protected rights pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

2. The Defendant is Gailmard Eye Center, LLC, a company doing business at 630 Ridge Road, Munster, IN 46321. Defendant is an "employer" for the purposes of the ADA and Title VII.

3. Plaintiff filed a Complaint of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about June 14, 2023, a copy of which is attached hereto, incorporated herein, and made a part hereof as "Ex. A." The EEOC issued its Dismissal and Notice of Rights on January 30, 2024, a copy of

--1--

which is attached hereto and made a part hereof as "Ex. B." All jurisdictional requirements have been met and all administrative remedies have been exhausted for the filing of this Complaint.

4. Plaintiff worked for the Defendant from on or about April 10th, 2023, until her wrongful termination on or about April 18th, 2023. At the time of separation from employment Plaintiff's job title was "optometrist technician".

5. On or about April 10th, 2023, was Plaintiff's first day at Defendant Gailmard Eye Center, LLC, as an optometrist technician. Plaintiff was told her training would consist of following Angelica Carillo to observe and taking notes only. Plaintiff made Angelica aware of her extensive experience in certain areas but was told to only follow Angelica and take notes.

6. On or about April 14th, Plaintiff went to her doctor's office because they had previously prescribed her medication, for her medical condition, that increased Plaintiff's need to frequently use the restroom and Plaintiff requested a doctor's note for the accommodations. Defendant was made aware of Plaintiff's condition by providing the supervisor, Melissa Kusbiz, with the letter from Plaintiff's doctor. Plaintiff informed Melissa at that time she required the reasonable accommodation of using the restroom as needed.

7. Angelica would consistently tell Plaintiff to wait where she was, while Angelica would leave her to do other things. Additionally, when Angelica would tell Plaintiff to clean a room, Angelica would hurry away and disappear. Plaintiff was told by two co-workers, Mariah and Alethia, to "watch her back" because

–2–

Angelica was complaining about her to Melissa that Plaintiff was not following her and was not able to keep up.

8. On Plaintiff's second day of employment with Defendant she was stopped by Melissa and told to clock in at 9 instead of 8:45 with everyone else. Plaintiff was also told by Melissa to park in the back and come in the locked back door instead of the front. Plaintiff raised concerns about this making her late, and Melissa responded that she would tell the others to listen for the doorbell to let Plaintiff in. Due to Plaintiff being told to enter by a locked door, reliant on others responding to the doorbell, she clocked in at 9:01 instead of 9:00 twice.

9. Plaintiff was able to access her time clock on or about Tuesday, April 18th. Defendant uses "scheduled" and "actual" columns in their scheduling app to determine whether an employee is on time. Plaintiff noticed that Melissa had changed her scheduled lunch hour from 12-1 pm to 12:15-1:15 pm. This made it appear that she was clocking out 15 minutes early for lunch when she clocked out at or around 12pm for lunch.

10. Plaintiff's second week of training was to be hands on, and she was told she would be following Melissa. On the first day of the second week, Melissa instructed her to follow a woman named Linda. Linda was instructed by Angelica only to let Plaintiff do simple things because they were "too busy".

11. While following Linda, Plaintiff used her expertise and knowledge of the field and chose to sit in a chair for a short moment so as not to be disruptive to a doctor

administering a patient's eye exam. She wrote a few questions in her notepad and immediately went back to following Linda once the doctor was finished.

12. The following day Plaintiff used the restroom while following Linda, when she came out, she noticed Linda in a room with one of the doctors. Plaintiff quickly knocked and opened the door to look for Linda when she was interrupted by Angelica and told not to "do that again". When Plaintiff asked how she should behave Angelica responded, "just don't" and walked away.

13. On or about April 17th, 2023, Plaintiff noticed that a similarly situated Caucasian woman named Gianna, who was hired just a few days prior to Plaintiff's termination, was being trained differently and more thoroughly than Plaintiff was by Angelica.

14. On or about April 18th, 2023, Plaintiff was pulled aside to Melissa's office with Melissa's boss, Kate. Melissa told Plaintiff she was being let go because of her attendance and for not following Angelica as instructed. Plaintiff responded that she was instructed to follow Linda, to which Kate interrupted and stated "We just feel like if you are sitting away from someone that you just don't want to be here. We want people to take notes, so we know they want to be here."

15. Plaintiff contends that the proffered reasons for her termination are false and pretextual, and in reality, she was terminated on the basis of her disability and in retaliation for requesting reasonable accommodations. Plaintiff also contends that she was discriminated against and terminated on the basis of her race (African

American/Black), as Gianna was not subjected to the same treatment as Plaintiff and is a Caucasian woman who does not have a disability.

16. The Defendant's discriminatory and retaliatory conduct was the direct and proximate cause of Plaintiff suffering the loss of her job and job-related benefits, including income, and subjected her to emotional distress, embarrassment, humiliation, and other damages and injuries. Plaintiff seeks compensatory damages, including reasonable attorney fees and costs.

17. Furthermore, Defendant's discriminatory and retaliatory behavior was intentional, knowing, willful, wanton, and in reckless disregard of Plaintiff's federally protected rights under the ADA and Title VII, warranting an imposition of punitive damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant for compensatory damages, punitive damages, reasonable attorney fees and costs, and for all other just and proper relief.

## JURY DEMAND

Pursuant to Rule 38 of the Indiana Rules of Trial Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**CLOSE & HITCHCOCK, LLP**

*/s/ Jennifer L. Hitchcock*
Jennifer L. Hitchcock, #34635-02
116 E. Berry Street, Suite 300
Fort Wayne, IN 46802

Telephone: (260) 408-6818
Facsimile: (260) 498-2655
E-mail: Jennifer@closehitchcock.com
Attorney for Plaintiff